UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS JACKSON,

    Plaintiff,

v.

JILL KLINE and
ANGELA HOLMAN,

    Defendants.
_____/

Civil Action No. 16-12917
Honorable Terrence G. Berg
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
MOTION FOR SUMMARY JUDGMENT, AND TO DENY
PLAINTIFF'S MOTION FOR RESTRAINING ORDER
<u>AND MOTION FOR PRELIMINARY INJUNCTION [ECF NOS. 8, 11, 27]</u>**

## I.    INTRODUCTION

Plaintiff Curtis Jackson, a prisoner proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and First Amendment rights during his incarceration at Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.[1] Defendants Jill Kline and Angela Holman move for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). [ECF No. 27]. The Court **RECOMMENDS** that the

---

[1] The Honorable Terrence G. Berg referred this action for all pretrial matters. [ECF No. 5].

1

defendants' motion for summary judgment be **GRANTED**. Because Jackson has not shown that he is likely to succeed on the merits, his motions for a restraining order and a preliminary injunction, [ECF Nos. 8, 11], should be **DENIED.**

## II.  BACKGROUND

In his unverified complaint, Jackson alleges that three psychologists and a psychiatrist diagnosed him with a mental illness that causes delusions, hallucinations, paranoia, depression, and suicidal thoughts, and that requires treatment and medication. [ECF No. 1, PageID 3]. He was thus placed in the mental health Residential Treatment Program (RTP) at ARF in December 2015. [*Id.*]. Jackson asserts that Kline was assigned as his case manager and was responsible for providing him treatment that included counseling, therapy assessments, and monitoring for suicidal behavior. [*Id.*]. According to Jackson, between December 2015 and March 2016, he experienced delusions and hallucinations that led him to believe that he was being attacked by men and demons, that he was being poisoned by nurses, and that he was meeting God. [*Id.*, PageID 3-4]. These delusions caused him to kick and hit his head against the cell door, pound his fist on the wall, scream, refuse medication and food, and make threats of suicide, and he suffered injuries to his wrist, feet, ankles and

calves as a result.  [*Id.*, PageID 3-5].

Jackson alleges that Kline observed him being delusional, suicidal and engaging in self-injurious conduct, but that she would respond by "laughing," "shrugging her shoulders," and calling him a "faker," and she took no action to observe his suicidal behavior or treat him.  [*Id.*].  He alleges that Kline falsified appointments that were never held.  [*Id.*, PageID 5].  According to Jackson, in February 2016, he asked Angela Holman, Kline's supervisor and the Unit Chief, to provide him with a new therapist, but instead of granting that request, Holman encouraged and directly participated in his denial of treatment.  [*Id.*, PageID 4-5].

In March 2016, Jackson filed a grievance against Kline for being deliberately indifferent to his mental illness.  [ECF No. 1, PageID 6].  He claims that after filing this grievance, Holman, Kline, and another psychologist called him into a conference room to interview him about the grievance.  [*Id.*].  Jackson asserts that after being questioned, Holman told him that "she [does] not tolerate grievances being filed against her co-worker."  [*Id.*].  Kline and Holman then threated to discharge Jackson from RTP and transfer him to another facility if he continued to file grievances against Kline.  The next month, Kline and Holman allegedly filed a transfer summary report to have Jackson discharged from RTP and transferred to

3

another facility, falsely claiming that he successfully completed the program even though he had actually been in the program for only three months and was still suffering from symptoms of his mental illness.  [*Id.*, PageID 6-7]. Jackson asserts that "the defendants['] words and actions, along with the timing of events shows that their wrongful discharge and transfer was clearly motivated by the plaintiff['s] protected conduct of filing a grievance." [*Id.*, PageID 7].

Jackson also alleges that defendants deprived him of his free speech and free expression rights by intercepting, censoring, and destroying mail that he sent to other mental health therapists because the mail concerned Kline's negligent care of his mental health treatment.  [*Id.*].

Kline and Holman dispute key allegations in Jackson's complaint.  In her affidavit, Kline states that Jackson was provided routine case management and group therapy while at the RTP, and that he did not express or exhibit suicidal ideation during his admission to the program or at any time during his placement there.  [ECF No. 27-4, PageID 200].  She alleges that Jackson reported that he had last self-injured in 2014, and that he denied that his intermittent auditory hallucinations were commanding him to harm himself.  [*Id.*].  According to Kline, she had two case management meetings with Jackson in March 2016, the second meeting

4

occurring because Jackson wanted to discuss an upcoming parole board hearing. [*Id.*]. But by the time that the mental health treatment team collaboratively determined in April 2016 that he should be transferred from the RTP level care because he had reached full benefit from the program, a newly assigned case manager wrote the transfer summary. [*Id.*, PageID 200-01]. Kline further denied that she has access to prisoner mail or that she censored or destroyed Jackson's mailed. [*Id.*, PageID 201].

Holman's affidavit echoes Kline's denial that mental health professionals handled prisoner mail. [ECF No. 27-5, PageID 204]. Holman states that a male case manager (Mr. Koszegi) had taken over Jackson's management because he had become overly familiar with Kline, and that it was Mr. Koszegi who discharged Jackson from RTP. [*Id.*, PageID 205]. Holman also concurred that discharge decisions were made by the treating team, and that the team had determined that Jackson had reached his maximum benefit from RTP and was exhibiting self-control and orientation. [*Id.*].

## III. ANALYSIS

Defendants argue that summary judgment is warranted because Jackson failed to exhaust all of his administrative remedies prior to bringing suit, because they were not personally involved in the unconstitutional

conduct alleged, and because his allegations do not rise to the level of deliberate indifference to a serious medical need. Jackson's one paragraph response to the motion for summary judgment states that he needs discovery because he "does not have enough facts essential to oppose the defendants' motion." [ECF No. 28, PageID 232]. He vaguely asserts that, through discovery, he will be able to show that defendants' were personally involved in the alleged wrongdoing and that he exhausted his claims. [*Id.*]. These assertions are not supported by an affidavit.

## A.

Rule 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446,

453 (6th Cir. 2001).

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). When feasible, the Court will decide exhaustion disputes before addressing the merits of the claims. *See Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). A dismissal for failure to exhaust administrative remedies, even when decided on summary judgment, is without prejudice. *Boyd v. Corr. Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2004).

Jackson's response to the defendant's motion can best be construed as an attempt to seek relief under Rule 56(d), which addresses "when facts are unavailable to the nonmovant." Under the rule, "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discover; or (3) issue any other appropriate order." The requirement of an affidavit is "no mere formality." *Green v. Miller*, No. 13-CV-14247, 2014 WL 1846063, at *6 (E.D. Mich. May 8, 2014). Therefore, a party seeking relief

under Rule 56(d) must "file an affidavit that indicate[s] to the district court its need for discovery, what material facts it hopes to uncover, and why it has previously not discovered the information." *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 305 (6th Cir. 2003). The mere assertion that there has been inadequate opportunity for discovery is insufficient. *Green*, 2014 WL 1846063 at *6-7 (collecting cases).

Here, Jackson did not comply with Rule 56(d) because he neither submitted an affidavit nor provided the material facts that he intends to uncover. He did not explain why, despite having filed his complaint, he has no evidence to oppose defendants' motion. Thus, Jackson has failed to properly seek relief under Rule 56(d) or to oppose defendants' motion for summary judgment with evidence necessary to create a genuine dispute as to a material fact. [2]

**B.**

The Prison Litigation Reform Act ("PLRA") requires prisoners to

---

[2] Had Jackson filed a verified complaint declaring the truth of the allegations under penalty of perjury, his complaint would have had the same weight as an affidavit for the purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). But unverified complaints like the one at issue cannot be considered Rule 56 evidence. *Zeune. v. Mohr*, No. 2:14-CV-153, 2015 WL 6468541, at *6 (S.D. Ohio Oct. 27, 2015), *report and recommendation adopted,* 2015 WL 7454672 (S.D. Ohio Nov. 23, 2015).

"properly" exhaust all "available" administrative remedies prior to filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93 (citation omitted) (emphasis in original). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth a three-step procedure prisoners must follow in order to complete the administrative review process and properly exhaust grievances. A prisoner must attempt to informally resolve the problem with the allegedly offending staff, and then may file a Step I grievance regarding any unresolved issues with a grievance coordinator. MDOC Policy Directive 03.02.130, ¶ P and R

9

(effective July 9, 2007).[3] The prisoner may then file a Step II grievance appeal within ten days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due. *Id.* at ¶ BB. The same schedule applies to a Step III appeal – it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the response was due. *Id.* at ¶ FF. Prisoners must appeal their grievances through Step III and wait until receipt of a Step III response, or until the response is past due, before filing suit.

Here, defendants argue that Jackson failed to exhaust the administrative remedies for his retaliatory transfer claim against Kline and all claims against Holman. Jackson filed three grievances concerning the allegations in this suit. Grievance ARF-16-04-0977-28i (0977), dated April 14, 2016, is the only grievance that was filed against Holman. [ECF No. 27-3, PageID 182]. This grievance alleged that on April 12, 2016, Holman and Kline discharged Jackson from RTP and transferred him to another facility, in retaliation for other grievances he made against them. [ECF No. 27-3, PageID 182]. The grievance was denied at Step I for failing to

---

[3] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

attempt to resolve the matter with Holman and Kline prior to filing the grievance, as required under the MDOC policy directive. [*Id.*, PageID 183]. Jackson appealed the grievance to Step II and III, and the rejection was upheld at both steps.

Jackson did not address the issue of whether he exhausted his administrative remedies in his response to defendants' motion except to state that he needed discovery. But when appealing the denial of his grievance at Step II, Jackson asserted that he was not able to resolve the issue prior to filing the grievance because he was transferred to another facility. [ECF No. 27-3, PageID 181]. This argument is unavailing. *Price v. Jordan*, No. 14-10194, 2016 WL 5109534, at *3 (E.D. Mich. Aug. 8, 2016) (collecting cases finding that a prisoner's transfer does not relieve him of obligation to exhaust administrative remedies). And while Jackson's complaint asserts that defendants executed the transfer summary report on April 4, 2016, and that he was discharged from ARF RTP the same day, a letter he previously sent to the director of the MDOC stated that his transfer occurred on April 12, 2016. [ECF No. 1, PageID 6; ECF No. 27-3, PageID 197]. Thus, Jackson had an opportunity to seek informal resolution of the issue regarding his transfer with the defendants before his transfer was effectuated, and Jackson failed to exhaust his administrative remedies with

11

respect to his claims against Holman.

On April 4, 2016, Jackson filed grievance ARF-16-04-0807-17a against Kline for allegedly "regularly screening and destroying confidential correspondence (kites) addressed to treatment therapists that [Jackson] placed in the mental health kite box." [ECF No. 27-3, PageID 187]. At Step I, the grievance was denied because the identified kites were in fact delivered to the therapist, and there was no evidence indicating that Kline was denying kite access. [*Id.*, PageID 186]. Jackson appealed at Step II and III, and at each step the rejection was upheld. [*Id.*, PageID 184]. Thus, Jackson sufficiently exhausted this claim against Kline.

Lastly, on March 11, 2016, Jackson filed grievance ARF-16-03-063412-B3 against Kline for claims that she was grossly negligent in failing to provide him with counseling, therapy, and the monitoring of his mental health. The Step I grievance was rejected because it was found that Kline treated Jackson consistently with MDOC guidelines. [ECF No. 27-3, PageID 196]. The rejection was appealed and upheld at Steps II and III. [*Id.*, PageID 193-94]. Jackson sufficiently exhausted his deliberate indifference claim against Kline.

For these reasons, all of Jackson's claims against Kline except that pertaining to his alleged retaliatory transfer should be found to have been

12

sufficiently exhausted, and all claims against Holman should be found to have not been sufficiently exhausted.

## C.

Jackson alleges that Kline "would intercept, censor, and destroy plaintiff's mail" and that Holman would encourage Kline to commit this offense. [ECF No. 1, PageID 7]. But Jackson provided no evidence to dispute Kline's and Holman's claims by affidavit that Kline did not handle prisoner mail, and did not tamper with Jackson's mail. Summary judgment of this claim should be granted.

## D.

Jackson also seeks relief under Section 1983 for violations of his Eighth Amendment rights. [ECF No. 1, PageID 3-5]. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits prison officials from inflicting "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The objective component requires a plaintiff to allege that the medical need at issue is "'sufficiently serious.'" *Id.* at 702-03 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703. However, a plaintiff does not have to show that the prison official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Rather, a plaintiff need only show that the official "recklessly disregard[ed]" a substantial risk of serious harm. *Id.* at 836.

Defendants argue that there is little evidence to establish that Jackson had a serious medical need, but even if he did, a reasonable jury would not find that the defendants subjectively perceived and recklessly disregarded a substantial risk of serious harm. [ECF No. 27, PageID 142]. Kline's and Holman's affidavits indicate that they did not observe Jackson to be suicidal or to engage in self-injurious behavior, and that he was deemed suitable for transfer because he exhibited self-control and

14

orientation. [ECF No. 27-4, PageID 200-01; ECF No. 27-5, PageID 205]. Jackson has submitted no evidence to the contrary, so summary judgment of his deliberate indifference claim should be granted.

### E.

Defendants argue that they are entitled to qualified immunity and that they cannot be sued in their official capacities under the Eleventh Amendment. To the extent that defendants are sued in their individual capacities, qualified immunity shields them from liability for civil damages because their conduct did not violate a clearly established statutory or constitutional right for the reasons stated above. *Scicluna v. Wells*, 345 F.3d 441, 445 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To the extent that Jackson requests monetary damages against defendants in their official capacities, such claims are barred by the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). A state official may be sued for injunctive relief in his or her official capacity. *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992). But Jackson's claims for injunctive relief are without merit for the reasons stated above.

### F.

Jackson filed a motion for a restraining order "to prevent the voices

from distracting me," to stop the guards at the Marquette Prison from making fun of him, and to give him proper medications. [ECF No. 8, PageID 35]. His motion for preliminary injunction requests that he be sent back to RTP, although he does "not have much evidence." [ECF No. 11, PageID 50]. Motions for restraining orders and preliminary injunctions require evidence that the moving party has a substantial likelihood of success on the merits. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Since Jackson has submitted no evidence in support of his claims, his motions for injunctive relief should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Kline and Holman's motion for summary judgment [ECF No. 27] should be **GRANTED**, and Jackson's motions for a restraining order and preliminary injunction [ECF Nos. 8, 11] should be **DENIED**.

                                                s/Elizabeth A. Stafford_____
                                                ELIZABETH A. STAFFORD
                                                United States Magistrate Judge

Dated: March 31, 2017

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager